IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL COURT
IN AND FOR SARASOTA COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

CASE NO. 2009 CA 007420 NC
Original Complaint Filed May 1st 2009

**BILL WARNER
PRIVATE INVESTIGATOR
    PLAINTIFF**

VS. ERic E. ScHmiDT, GOOGLE INc
**PHYLLIS BARR, ENTER NET INC
KHALIM MASSOUD
MUSLIMS AGAINST SHARIA
JANE DOE** ~~PAMELA GELLER~~
    **DEFENDANT(S)**

## AMENDED COMPLAINT ADD PAMELA GELLER
## LIBEL, SLANDER, DEFAMATION, IMPERSONATION

Comes now the PLAINTIFF Bill Warner who is seeking damages of $500,000 each DEFENDANT(S) and who respectfully requests this Court to find fault and liability on DEFENDANT(S).

1. PLAINTIFF Bill Warner is an individual, over the age of 18 and a resident of Sarasota County Florida.

2. DEFENDANT Pamela Geller is an individual over the age of 18 and located at 330 East 57th Street Manhattan, New York, NY 10022.

3. Venue is proper in Sarasota County Florida.

4. All conditions precedent to filing have occurred.

5. The Plaintiff Bill Warner resides in Sarasota Fl, the Plaintiff Bill Warner is licensed by the State of Florida as a private investigator his license number is C9900446, the Plaintiff Bill Warner also owns and operates the WBI Inc private detective agency in Sarasota Fl and has for the last 16 years, the agency license number is A9500364.



6. The Plaintiff Bill Warner has worked for the US Attorney's office in Tampa Fl, through the Bureau of Immigrations Customs Enforcement (ICE) and the US secret Service both based in Tampa Fl, as a paid confidential informant and consultant since 2003.

7. The Plaintiff Bill Warner has been recognized as an expert in unearthing and shutting down terror websites that recruit Islamic radicals for suicide bombings and also solicit money for jihad through such terror websites hosted in the USA. The Plaintiff Bill Warner has been featured in news articles and TV news programs that concern the ever growing problem of homegrown terrorists recruited through the internet, such articles have appeared in the Tampa Tribune, the Arizona Republic Phoenix AZ, the Charlotte Observer NC, WBTV Charlotte NC, Fox News National, Fox News 13 TV Tampa Fl, ABC Action News Tampa Fl, the BBC News London England and several Associated Press articles, all of this activity since January of 2008.

8. The Plaintiff Bill Warner is a paid consultant to the Sunday Daily Mail Newspaper in London England with an office in New York City NY.

9. The Plaintiff Bill Warner's reputation has been ruined by the Defendant Pamela Geller. On Friday, January 07, 2011, in response to a lawsuit filed against Pamela Geller by attorney Omar Tarazi, who is seeking damages in a Defamation lawsuit of $10,000,000, Defendant Pamela Geller posted to her website the following; "*And still another example: Plaintiff seeks correspondence between Defendant Geller and Bill Warner, the Sarasota, Florida man Plaintiff Omar Tarazi seeks to subpoena. (RPD at No. 14 at Ex. A). Yet again, what is the connection to this lawsuit? Warner is not even mentioned in passing. The answer lies in the fact that Warner appears to be a kind of psychotic blogger who claims to be a private investigator and who has accused Defendant Geller of being part of some kind of mafia- hit squad. His blog (Bill Warner) is essentially the incoherent ramblings of a mind lost within itself. Apparently, Plaintiff thinks Warner is some kind of treasure trove of "grassy knoll" conspiracies and 9-11 "Truther" facts relating to Defendant Geller. Notwithstanding Plaintiff's imaginative search for the secrets of the ramblings of a diseased mind (Plaintiff Bill Warner), this federal litigation is bounded and controlled by more than his imagination. The Federal Rules of Civil Procedure relating to discovery have been promulgated for a reason. Discovery cannot be used as a club to create facts that don't exist anywhere in the real world.*
http://atlasshrugs2000.typepad.com/atlas_shrugs/2011/01/islamic-lawfare-10000000-lawsuit-geller-files-motion-for-protection-order.html

10. Defendant Pamela Geller publishes a website called "Atlas Shrugs" http://atlasshrugs2000.typepad.com/ from her location 330 East 57th Street Manhattan, New York, NY 10022.

11. Defendant Pamela Geller is the executive director of "Stop the Islamization of America" (SIOA). Soon after SIOA was launched, both Pamela Geller and Robert Spencer (Co-director) attempted to have their organization's trademark patented by the US government. They assumed that it would go through without a problem but they didn't expect what came next. The US patent office rejected SIOA's attempt to patent its trademark because of its anti-Muslim nature. Stop the Islamization of America is nothing less than a hate group that deserves to be monitored and observed by Homeland Security and the likes of the Southern Poverty Law Center. It is one of a plethora of extreme right-wing organizations that have arisen since Barack Obama has taken office and should be included in any further report or update on the rise of right-wing extremism. Earlier this year, Pamela Geller — who also has questioned whether President Obama was born in America — bought anti-Muslim ads that were displayed on New York City buses for a month. She warned that Muslims will "turn to further intimidation, murder and terrorism" if they can't achieve a political takeover. Her comments were so incendiary, in fact, that several neo-Nazi organizations even ignored the fact that she is Jewish and published her diatribes. She in turn commented favorably on the South African, apartheid-defending terrorist Eugene Terre' Blanche after he was murdered, blaming his death on "black supremacism."

12. Defendant Pamela Geller in the past has been linked to co-defendant "Muslims Against Sharia". "Muslims Against Sharia" is a front group for a group of right wing radicals who post articles to the internet with a anti-Muslim agenda, there does not appear to be any Muslims actually associate with the "Muslims Against Sharia" group.

13. Defendant Pamela Geller links directly to Robert Spencer a author and blogger who writes anti-Muslim articles posted to the internet, he writes with a broad stroke implicating that the religion of Islam is the root cause of terror attacks and that all Muslims adhere to such policy. Robert Spencer and Defendant Pamela Geller are co-directors of the Stop the Islamization of America" (SIOA) hate group and frequent contributors to a web page called FrontPage Mag.com Front Page magazine is a publication put out by 60's radical and Black Panthers financier David Horowitz, Robert Spencer is a paid consultant by David Horowitz and the FrontPage Mag.com.

14. "Muslims Against Sharia" front group links directly to David Horowitz, David Horowitz raises money for the group "Muslims Against Sharia" on the donations page of their website they state send money to David Horowitz Freedom Center, P.O. Box 55089, Sherman Oaks, CA 91499-1964.

15. "Muslims Against Sharia" and Defendant Pamela Geller appear to be one and the same; PAMELA GELLER BIO IN HER OWN WORDS. http://www.blogger.com/profile/10480608676787781966 On Blogger Since February 2005.

## Pamela Geller
- Gender: Female
- Astrological Sign: Gemini
- Industry: Publishing
- Occupation: Politics
- Location: New York : New York : United States

Wanna save the world today? yeah babababay.

## My Blogs
## Team Members

Muslims Against Sharia Muslims Against Sharia Poste de veille ArabThinker SEOSolutions JAMJAMAT rasheed HASAN MAHMUD OutKid Karmen Muslims Against Sharia Allan North Northwester ServantOfYahwehs KMacGinn Dave Gaubatz Imran Ahmed A. Millar Chan Muslims Against Sharia 44 more

Jewish Mothers for Sarah Palin Jewish Mothers for Sarah Palin B. Hussein Obama PAMELA'S NEWS (go to AtlasShrugs.com)

## Contact
- My Web Page ... http://atlasshrugs2000.typepad.com/atlas_shrugs/
- atlasshrugs2000 (AOL)



Push-Button Publishing

## Photo



View Full Size

## Contact

My Web Page
atlasshrugs2000 (AOL)

## User Stats

| On Blogger Since | February 2005 |
|---|---|
| Profile Views (approximate) | 15787 |

# Pamela Geller

Gender: Female
Astrological Sign: Gemini
Industry: Publishing
Occupation: Politics
Location: New York : New York : United States
Wishlist

### About Me

A man whose ability and independence leads others to reject him, but who perseveres nevertheless to achieve his values. Man as an individual, as a creator. What's the most depraved type of human being? Not a sadist or a murderer or a sex maniac or a dictator; "The man without a purpose." Yet most people seem to go through their lives without a clearly defined purpose.

### If you were a wrestler, what would be your finishing move?

Wanna save the world today? yeah babababay

### Interests

Saving the Free World Truth Justice and American Way

### Favorite Movies

anything before 1962

### Favorite Music

Brubeck Costello Billie Holiday Smiths Ramones Dan Hicks Hot Licks Louis Prima Prokofiev Charlie Parker Sinatra Eckstein Ramones (yeah twice)

### Favorite Books

uh..........duh Rand Mises Emily Dickinson Edna St Vincent Millay Sara Teasdale Winston Churchill Winston Churchill Sir Martin Gilbert Bat Ye'or

### My Blogs

Ig colloquium

### Team Members

Glen Wishard tankdemon Miss Prissypants Mike Ayatollah Ghilmeini Mike P SwampWoman Mcgyver Straight Up with Sherri brenda grayp Rev. Churchmouse Freedom Fan jpsfudimo Mafia

Home | Features | About | Buzz |
Help | Discuss | Language |
Developers | Gear
Terms of Service | Privacy |
Content Policy | Copyright © 1999 - 2011 Google

Muslims Against Sharia

Princess Princess Bernie quark2 Bubble Girl playah grrl *27 more*

No Compromise Vladtepesblog.com OutKid Tiger of Judah robotsoul Louise Allan TarekFatah PM Michael Travis North Northwester CitizensAgainstSharia Fern Sidman A. Millar Rosemary Welch American Muslim, not Muslim-American Dave Gaubatz tantiv4 ServantOfYahweh Guy DeWhitney: Heretic Crusader *44 more*

Jewish Mothers for Sarah Palin

B. Hussein Obama Jewish Mothers for Sarah Palin

PAMELA'S NEWS (go to AtlasShrugs.com)

Print                                                                                                      Page 1 of 11

**From:** bill warner (wbipi@verizon.net)
**To:** wbipi@verizon.net;
**Date:** Sat, January 8, 2011 3:33:33 PM
**Cc:**
**Subject:** geller slander

http://atlasshrugs2000.typepad.com/atlas_shrugs/2011/01/islamic-lawfare-10000000-lawsuit-geller-files-motion-for-protection-order.html

# Friday, January 07, 2011

### Islamic Lawfare: $10,000,000 Lawsuit -- Geller Files Motion for Protection Order

Here's the latest filing in the litigation jihad against me by Rifqa Bary's parents' attorney, Omar Tarazi. I cannot thank David Yerushalmi enough for the extraordinary work and time he is putting in to defend my freedom of speech from this Islamic supremacist lawsuit. Please donate to the legal defense by contributing to Atlas. Donate here. (go to Paypal.com and use writeatlas@aol.com) Or contribute to David Yerushalmi's organization, SANE. You can your checks to SANE, POB 6358, Chandler AZ 85246

It seems to me that Tarazi's entire purpose in filing this lawsuit is to engage in the discovery. He simply wishes to fish around in my private correspondence for *anything* damning he might find.

The brief in support of the motion points out that not one iota of the information sought has anything to do with anything said by me or written by me at Atlas. He simply wants to obtain information by which he may attack me on other fronts (politically and socially) and which have nothing to do with what I have said about him.

And it is obvious that any suggestion of "conspiracy" with Stemburger is unsubstantiated, and cannot be sustained. It is ridiculous on its face. I have long disagreed with Stemburger's legal strategy for Rifqa, and I published several pieces explaining my disapproval of his methods since December 2009.

It is laughable that he alleges a conspiracy between Stemberger and me. Based on what? Down the toilet it should go.

I hope that this motion prevails. And I hope my motion to dismiss prevails. It should. This is harassment and attrition. No one should have to go through this, in defense of freedom no less.

If you wish to read the motion: Download Geller Motion for Prot Order_ECF Filed

Excerpts:

> CERTIFICATION PURSUANT TO LOCAL RULE 37.2
> Counsel for Defendant Geller hereby certify that they made a good faith effort to confer with Plaintiff Tarazi to resolve this matter, but the parties could not reach an agreement. Defendant Geller, through her counsel, also requested and participated

in a telephonic conference between the parties with the Honorable Magistrate Judge King, seeking a stay of discovery pending this court's determination of Defendant Geller's motion to dismiss. Magistrate Judge King denied the telephonic request for a stay, but made clear that Defendant Geller may file this formal motion seeking the requested protective order.
This motion is supported by the accompanying Memorandum of Law and by the exhibits attached thereto.

Plaintiff Omar Tarazi filed this federal lawsuit for defamation seeking $10,000,000 in unspecified damages. (See Am. Compl.) (Doc. No. 10). The lawsuit arises out of statements made by two defendants regarding Plaintiff's involvement as an attorney for the parents in a multi-state custody battle over a 17-year old Muslim woman, Rifqa Bary, who ran away from her home in Ohio fearing for her life after converting to Christianity, seeking refuge in Florida with fellow Christians. Plaintiff named as defendants John Stemberger, an attorney who represented Bary in the Florida litigation, and Pamela Geller, a New York "blogger" who reported on allegations about Plaintiff made by Defendant Stemberger in court and publicly via various news media outlets. According to Plaintiff's Complaint, Defendant Geller's allegedly defamatory statements were also based upon the previously published online reports of another Web log, "My Pet Jawa." (See Am. Compl. at ¶¶ 7-10; 13). Defendant Geller seeks a protective order to stay discovery directed to her on the grounds that the allegations that she defamed Plaintiff and that she conspired with Defendant Stemberger in doing so are meritless. Specifically, Defendant Geller asks this court to stay discovery served upon her pending this court's decision on her motion to dismiss because Ohio Free Speech law explicitly and irrefutably protects her speech at issue in this case and because Plaintiff's allegations of a conspiracy between Defendants Geller and Stemberger are naked assertions, devoid of any factual support, and meritless. This factual and legal context, against the backdrop of Defendant's constitutionally protected right to freedom of speech and the chilling effect of a meritless claim of defamation on that right, cries out for the relief sought, especially given the fact that Plaintiff's lawsuit is in its early stages and a stay of discovery as to Defendant Geller for just the few months that will be required for this court to render its decision on the motion to dismiss will not disadvantage Plaintiff's claims against either Defendant. II.

PROCEDURAL POSTURE1
Plaintiff, a licensed Ohio attorney, filed his original complaint (Doc. No. 2) on September 2, 2010. The Complaint was so woefully inadequate that after reading the answers of both defendants, Plaintiff immediately filed an amended complaint ("Complaint") on October 25, 2010—essentially a rewriting of the original from scratch (Doc. No. 10). While this second version is certainly longer, it is no less incoherent. Indeed, it includes, as a verified complaint, sworn statements by Plaintiff which demonstrate as a matter of law and beyond cavil that the alleged offending statements by Defendant Geller constitute constitutionally protected speech. In sum, it demonstrates a fundamental misunderstanding of First Amendment law, as well as the more protective speech law under the Ohio State Constitution.
Moreover, Plaintiff's Complaint is a transparent effort to drag Defendant Geller into a dispute between adverse lawyers by concocting a conspiracy between Defendant Geller, who is a blogger from New York City, and Plaintiff's legal adversary in

Florida, Defendant Stemberger,2 without alleging anything more than the word "conspiracy." Plaintiff's ploy to craft a conspiracy between the two Defendants out of thin air (or, more aptly, no air) is manifestly frivolous.

On November 12, 2010, Defendant Geller filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). Importantly, Defendant Geller's Rule 12(b)(6) motion was based on her free speech rights guaranteed under the Ohio and U.S. Constitutions, with a special emphasis on Ohio's Free Speech protections, which are broader than even our celebrated free speech protections guaranteed under the First Amendment. This greater protection under the Ohio Constitution is especially relevant in this case because when the U.S. Supreme Court and the Ohio Supreme Court confronted identical facts of public allegations of perjury arising from the same Ohio publication, the U.S. Supreme Court found as a matter of law under the First Amendment that the speech was not protected as opinion or hyperbole, but the Ohio Supreme Court, explicitly noting that Ohio Free Speech protection extends beyond the First Amendment, found the speech protected as opinion and hyperbole as a matter of state law. (See Def.'s Br. in Supp. of Mot. to Dismiss at 16-24) (providing a detailed discussion of the different approaches to free speech under Milkovich v. Lorain Journal Co, 497 U.S. 1 (1990), and Scott v. News-Herald, 25 Ohio St. 3d 243 (1986)).

An additional argument was made by Defendant Geller for dismissal of the conspiracy allegations of the Complaint on the grounds the allegations patently failed the standard of plausibility required by the U.S. Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

The motion to dismiss was fully briefed upon the filing of Defendant Geller's reply brief (Doc. No. 41) on December 30, 2010.

After the filing of the motion to dismiss, Plaintiff improperly filed with the court a slew of discovery requests directed to both Defendants and even upon a third-party neither named in the Complaint as a party nor referenced anywhere in the factual allegations. Plaintiff failed to properly serve those requests under the Rules.3 Specifically, Plaintiff improperly filed with the court a Notice of Deposition of Defendant Geller scheduled for January 12, 2011 (Doc. No. 35), and a Notice of Deposition of Defendant Stemberger scheduled for January 14, 2011 (Doc. No. 34). To this date, Plaintiff has failed to properly serve the Notice of Deposition on Defendant Geller.

Plaintiff also improperly filed with the court Requests for Production of Documents on both Defendants (Doc Nos. 36 [Geller] and 37 [Stemberger]) and once again failed to properly serve these discovery requests per the Rules (at least with respect to Defendant Geller).

Plaintiff also improperly filed with the court a Notice of Subpoena on a Bill Warner who purportedly resides in Sarasota, Florida (Doc. No. 38). Oddly, Mr. Warner is neither a named Defendant, nor is he even mentioned in the Complaint. Further, it is entirely unclear to counsel for Defendant Geller how filing a Notice of Subpoena in this court and "issued" by the Clerk of the U.S. District Court for the Southern District of Ohio is effectual or even legally valid when service is presumably on a non-party deponent in another District more than 100 miles away. See Fed. R. Civ. P. 45(b)(2).

After Defendant Geller's counsel emailed Plaintiff several times to inform him that it is improper under the Federal Rules of Civil Procedure and the Local Rules to file discovery with the court (when there is no pending relevant discovery motion) and that service of discovery requests are not accomplished through the court's ECF system (given that the very filing with the court is improper4), Plaintiff finally mailed to Defendant Geller's local Ohio counsel a Request for Production of Documents, identical in substance to the one filed with the court,5 and a new discovery request (not previously filed with the court), requesting written answers to interrogatories. The service certificate for both discovery requests state that they were mailed on December 14, 2010 (a true and correct copy of these discovery requests are attached hereto respectively as Exhibit A [Request for Production of Documents] and Exhibit B [Interrogatories]).6

Thus, the extant discovery requests propounded by Plaintiff to Defendant Geller are a Request for Production of Documents and Interrogatories, both of which are due by January 18, 2011.7

III.  LEGAL ARGUMENT

A.  This Is an Appropriate Case for the Court to Exercise Its Discretion and Stay All Discovery Directed to Defendant Geller Pending Resolution of Defendant's Motion to Dismiss.

The best articulation from this court of the law applicable to a motion for protective order staying discovery pending a dispositive motion appears in Abercrombie & Fitch Co. v. Federal Ins. Co., No. 2:06-cv-00831, 2010 U.S. Dist. LEXIS 106182, at *7-*9 (S.D. Ohio Oct. 5, 2010):

[...]
In bringing this motion for protective order, Defendant Geller is especially cognizant of one important consideration at work here: the mere pendency of the motion to dismiss is not a basis for a protective order. Defendant Geller is not asserting otherwise, explicitly or implicitly. Rather, Defendant Geller's motion for a protective order is based on the specific calculus of factors articulated by this court as set forth above. We now turn to that calculus.

B.  The Facts of this Case in the Context of Defendant Geller's Motion to Dismiss Establish the Propriety of Granting the Requested Protective Order.

For purposes of this motion, and keeping in mind the court's broad grant of discretion, the analysis of the courts in this district suggests the following kinds of queries:

1.  Does the motion to dismiss raise viable arguments that the lawsuit is meritless?
2.  Is the motion to dismiss based upon a claim that the lawsuit is barred either by virtue of some statute (i.e., statute of limitations or immunity from suit) or, even more importantly, that the prosecution of the lawsuit itself is a patent violation of a constitutional liberty?
3.  Given a balancing of the interests, is a protective order on behalf of Defendant Geller for just the few months necessary for the court to rule on the motion to dismiss prejudicial to Plaintiff's interest to prosecute his claims?

4. Is there evidence in the record to suggest that Plaintiff's discovery amounts to a fishing expedition? And finally,

5. Is discovery likely to add to or assist the court in deciding the dispositive motion before it?

We will treat each in turn.

1. Does the motion to dismiss raise viable arguments that the lawsuit is meritless?

Defendant Geller's motion to dismiss proffers an irrefutable argument that both the general defamation claim as to Defendant Geller and the specific conspiracy allegation are demonstrably meritless. Indeed, this is best evidenced by Plaintiff's response to the motion to dismiss, in which Plaintiff was unwilling and unable to distinguish the contextual facts of Scott v. News-Herald, 25 Ohio St. 3d 243 (1986), a case which provides, as Defendant Geller argued in her supporting brief, an a fortiori basis for dismissal in this case. (See Def.'s Reply Br. in Supp. of Mot. to Dismiss at 1-3).

Plaintiff's conspiracy claim, which amounts to a single sentence in a single allegation that merely asserts a conspiracy, fares no better. (See Am. Compl. at ¶ 31). Once again, when we turn to Plaintiff's response to the motion to dismiss on this point, his answer was to suggest the absurdity that a conspiracy is "plausibly" supported by the fact that one Defendant reports in her blog what the other Defendant stated in court and on the public airways previously. (See Def.'s Reply.Br. in Supp. of Mot. to Dismiss at 9-10). That of course would render every news story and blog entry which cites to some earlier reporting of that event a conspiracy with the original public statement.

Given not only the persuasiveness of the arguments set out in the motion to dismiss, but also the palpably deficient responses to the motion by Plaintiff, Defendant Geller respectfully suggests that this case is the quintessential exception to the normal default rule that "run-of-the- mill" dispositive motions are not sufficient grounds for a protective order staying discovery. See Miller v. Countrywide Home Loans, No. 2:09-cv-0674, 2010 U.S. Dist. LEXIS 63374 (S.D. Ohio June 4, 2010) (granting motion for stay of discovery pending motion to dismiss on the grounds that the complaint was not likely to survive).

2. Is the motion to dismiss based upon a claim that the lawsuit is barred either by virtue of some statute or, even more important, that the prosecution of the lawsuit itself is a patent violation of a constitutional liberty?

The court in Shaw v. Total Image Specialists, made the point that a protective order staying discovery pending a dispositive motion would be appropriate when "the motion raises an issue such as immunity from suit, which would be substantially vitiated absent a stay." Shaw, 2010 U.S. Dist. LEXIS 2976, at *2-*4. In other words, when there is a statutory or common law immunity from suit, courts should not allow discovery to move forward, especially if the claim of immunity is a strong one. By permitting

discovery in such cases, the court is essentially allowing the plaintiff to vex the defendant, who should not have been sued in the first instance as a matter law even if the facts about the tortious deed were correct.

To the extent that the policy seeks to protect the claim of immunity, how much more so is there an overriding public and private interest to protect free speech from the chilling effect of a defamation action. This court in Roth put it this way: "Additionally, the Court is required to take into account any societal interests which are implicated by either proceeding or postponing discovery." Roth, 2009 U.S. Dist. LEXIS 83160, at *3. Indeed, the entire free speech/defamation jurisprudence is built on the fact that if we allow state law to impose the rigors of defamation litigation and the concomitant potential for liability in matters of political speech, this most protected and cherished right will have been demeaned and threatened. Thus, the Supreme Court fashioned a whole host of restrictions on state defamation law via the Fourteenth Amendment, such as requiring the extraordinary showing of an "actual malice" standard of care. See New York Times v. Sullivan, 376 U.S. 254 (1964). And, in Ohio, the state supreme court has gone consciously further by protecting opinion and hyperbole beyond the First Amendment's otherwise gracious protections. See Scott, 25 Ohio St. 3d at 243.

In this case, Defendant Geller's free speech is under assault with every failure by an Ohio attorney acting as a pro se plaintiff to follow the rules of court, with every motion, and most especially, with every burdensome discovery demand. What will be the effect on Defendant Geller's protected speech and indeed the protected speech of others if putative plaintiffs know
they can file pro se defamation claims which patently invade the protective ring imposed by Scott or still other similar decisions, yet proceed with vexatious discovery while the court decides a facially persuasive dispositive motion? In those states such as Ohio lacking an anti- SLAPP statute providing for recovery of attorney's fees, there is absolutely no downside risk to such constitutionally offensive lawsuits and they will be used as a kind of "lawfare" to counter and chill free speech. However, the irreparable harm that this vexatious litigation is having on Defendant's free speech rights can be mitigated, at least in part, by the granting of the requested protective order.

Indeed, what Plaintiff could and should have done in this case to counter what he considered bad or offensive speech was to engage in his own speech, or to enlist others to do so. As we know so well in this free society where the people's public speech is the cornerstone of representative self-governance, "the remedy to be applied is more speech, not enforced silence." Whitney v. California, 274 U.S. 357, 377 (1927). In the final analysis, this lawsuit is an effort by Plaintiff to enforce silence through the power and authority of the courts. Plaintiff has access to the same Internet as Defendant Geller. Indeed, notwithstanding all of Plaintiff's baseless claims about the injurious impact of Google, an impact no one in public life escapes for long, a quick search of "Omar Tarazi" on Google shows that his speech, not Defendant Geller's, controls the narrative if the narrative is measured, as Plaintiff argues, by the Google search results. In light of these most important public and private interests touching upon the most fundamental liberty in our political society, a request for a protective order staying a few months of discovery

can hardly be considered unreasonable or inappropriate.

3. Given a balancing of the interests, is a protective order on behalf of Defendant Geller for just the few months necessary for the court to rule on the motion to dismiss prejudicial to Plaintiff's interest to prosecute his claims?

In the context of the discussion above, the balancing of the interests in this case is heavily
weighted in favor of a prudent protection of Defendant Geller's free speech. See Wagner v. Circle W Mastiffs, Nos. 2:08-cv-431, 2:09-cv-0172, 2009 U.S. Dist. LEXIS 123126 (S.D. Ohio Dec. 22, 2009) (holding that the balance of the interests weighed in favor of granting the motion for stay of discovery); Carter v. Wilkinson, No. 2:05-cv-0380, 2009 U.S. Dist. LEXIS 4168, *36- *37 (S.D. Ohio Jan. 8, 2009) (holding that the balance of the interests weighed in favor of granting the motion for stay of discovery). The lawsuit is still quite young, unlike Abercrombie & Fitch Co., a case that had meandered for four years before the stay of discovery came before the court. The only possible argument available to Plaintiff in this regard is that the court's scheduling order, which provides for a January 31, 2011, deadline for "[m]otions or stipulations addressing the parties or pleadings" (Doc. No. 33 at 1), might prevent him from moving to amend if ultimately he defeats the motion to dismiss and uncovers some evidence of a conspiracy that includes yet other unknown actors.
The answer to this, however, is not to abandon the guidance provided by judicial prudence when it comes to constitutionally protected free speech. Rather, the court could simply modify the scheduling order to provide for this rather improbable outcome. With that facile amendment to a scheduling order that was itself not based on some objective and fixed rule about motions for leave to amend, see, e.g., Fed. R. Civ. P. 15(a)(2), it is simply inconceivable how postponing Plaintiff's discovery of Defendant Geller for a few months at this early stage in the litigation could possibly prejudice his rights. Indeed, Plaintiff would remain free to conduct discovery of Defendant Stemberger, who has not filed any dispositive motion, and any third parties Plaintiff felt controlled additional information that might further his claims.

4. Is there evidence in the record to suggest that Plaintiff's discovery amounts to a fishing expedition?

This query is really seeking some objective indicia of Plaintiff's bad faith. In other words, is the lawsuit really a form of "lawfare" to use the expense and burdens of litigation generally and discovery in particular to warn Defendant Geller and others like her that while the Ohio Constitution might protect their speech, Plaintiff and others like him will be able to exploit the fact that our federal and state courts are overburdened with litigation and move slowly, allowing plaintiffs free reign to impose their political and legal costs on defendants and society with no downside at stake? Or, is discovery being used to fish for facts the Complaint has only alleged at the skeletal margins, lacking any rational plausibility? A cursory examination of Plaintiff's current discovery requests suggests strongly that the answers to both questions are in the affirmative.

For example, Request for Production of Documents ("RPD") No. 2 seeks any and all documents between Defendant Geller and Robert Spencer relating to the Rifqa Bary case. (See RFD at No. 2 at Ex. A). But how is this relevant to any of the allegations in the Complaint? Robert Spencer is not a named party, nor is there a single allegation suggesting he engaged in any wrongful conduct. In fact, there is no allegation to even suggest he might be privy to any information relating to any of the allegations of the Complaint. Yet, Plaintiff knows that Robert Spencer runs a hugely popular Web log called "Jihad Watch" that is very critical of what is referred to as "political Islam," or the movement to establish Islamic law as the basis for political societies in which Muslim live. This discovery request is a warning shot to Spencer; it is not legitimate discovery for matters remotely relevant to this litigation. Other examples abound. In RPD No. 11, Plaintiff seeks "[t]he list of any donors that have donated to support the Atlas Shrugs blog or the [American] Freedom Defense Initiative ["AFDI"] . . . ." (RFD at No. 11 at Ex. A). What is the connection of AFDI to this lawsuit other than the fact that Defendant Geller is its executive director? AFDI is not accused of any
wrongdoing. But, Plaintiff knows that AFDI is aggressively pursuing an advertising campaign on mass transit buses and subways in cities across the country to provide shelter and counseling to young Muslim women threatened by honor killings. By improperly attempting to force AFDI to disclose its private, confidential sources of funding via a discovery request served upon Defendant Geller as an individual, Plaintiff is sending another warning shot across multiple bows: If you fund any of Defendant Geller's work, I will gain access to your personal and confidential contributions and information. To prevent this, Defendant Geller would need to engage in yet more piecemeal and expensive discovery motion practice.

And still another example: Plaintiff seeks correspondence between Defendant Geller and Bill Warner, the Sarasota, Florida man Plaintiff seeks to subpoena. (RPD at No. 14 at Ex. A). Yet again, what is the connection to this lawsuit? Warner is not even mentioned in passing. The answer lies in the fact that Warner appears to be a kind of psychotic blogger who claims to be a private investigator and who has accused Defendant Geller of being part of some kind of mafia- hit squad. His blog is essentially the incoherent ramblings of a mind lost within itself. Apparently, Plaintiff thinks Warner is some kind of treasure trove of "grassy knoll" conspiracies and 9-11 "Truther" facts relating to Defendant Geller. Notwithstanding Plaintiff's imaginative search for the secrets of the ramblings of a diseased mind, this federal litigation is bounded and controlled by more than his imagination. The Federal Rules of Civil Procedure relating to discovery have been promulgated for a reason. Discovery cannot be used as a club to create facts that don't exist anywhere in the real world, and most importantly, are nowhere to be found anywhere near the most far-reaching implications of the allegations of the Complaint.

5. Is discovery likely to add to or assist the court in deciding the dispositive motion before it?
We need not pause long here. Nothing in Plaintiff's discovery actually propounded and
nothing he might propound in the future is going to address the Scott-Vail Ohio Free Speech issues. The analysis provided by the Ohio Supreme Court resides in

the four corners of the defamatory document and the "objective" context of the publication. There is nothing Plaintiff might add to what we already know; and, indeed, none of his discovery requests propounded to date even remotely address the Scott-Vail analysis.

Moreover, while it is true that a discovery-sanctioned fishing expedition into Plaintiff's theory of a conspiracy might in some theoretical context lead to relevant information, the question that ought to be asked is whether the mere utterance of the word "conspiracy" in a single allegation of a complaint devoid of any other facts even suggestive of a conspiracy provide Plaintiff with a court-sanctioned license to search for facts that even the Complaint recognizes do not exist today.8    If the answer is anything but "no," the standard brought to bear by the Supreme Court in Twombly-Iqbal is rather toothless in preventing the use of vexatious litigation to achieve ulterior and improper purposes.

CONCLUSION

Given the calculus suggested by the relevant case law and especially given the balancing of the private and societal interests involved in this case, Defendant Geller respectfully requests that the court grant her motion for a protective order to stay discovery pending the decision on her motion to dismiss.

8 Not to mention, if the alleged defamatory statements are in fact not defamatory as a matter of law, the conspiracy claim fails as well. There is as of yet no "conspiracy-to-engage-in-free- speech" cause of action under the laws in any state. Consequently, because this claim is parasitic to the substantive defamation claim, the court should grant the requested protective order as to all discovery.

Previous: Lawfare Status: $10,000,000 Islamic Supremacist Lawsuit against Pamela Geller Moves Forward

Tarazi vs Geller: More Islamic Supremacist Harassment: "Defendant Geller should not have to endure one more day of needless and costly litigation to defend against claims that fail as a matter of law."

Litigation Jihad

Lawfare Status: Omar Tarazi's $10,000,000 Lawsuit Against Pamela Geller
Lawfare Lawsuit Brought by Omar Tarazi -- Litigation Jihad
Tarazi vs Geller: More Islamic Supremacist Harassment: "Defendant ...
$10,000,000 Lawsuit Against Pamela Geller, Cites Free Speech Lawfare ...
Atlas Shrugs: Litigation Jihad

Posted by Pamela Geller on Friday, January 07, 2011 at 01:31 AM in Atlas vs. Legal Jihad, Litigation Jihad | Permalink ShareThis

Reblog (0) | | Digg This | Save to del.icio.us | Tweet This! |

## Comments

LKP said...

I read through the excerpts and it appears that your attorney has done a good job of delivering a tort smackdown on the plaintiff.

Reply Friday, January 07, 2011 at 02:03 AM
When*Pigs8Fly said...

And we continue to educate these son-to -be litigation jihadis in our own universities. Shame on us for our own stupidity disguised as tolerance.

Reply Friday, January 07, 2011 at 02:25 AM
When*Pigs8Fly said in reply to When*Pigs8Fly...

should be soon-to be

Reply Friday, January 07, 2011 at 02:25 AM
Alexander Münch said...

" May Allah bless Omar Tarazi with long life ! "

( Attached to a Heart & Lung machine that cost $10,000,000 ! )

Reply Friday, January 07, 2011 at 02:39 AM
Barbara said...

Pamela, your a big thorn in their side, one they want to "pluck out" anyway they can...not only on Rifqa's case here, but they would love to shame you in their favor, anyway they can, to win a case against you, would just allow them to move forward with their deep desires of transforming our laws into theirs. They Must be shown that this is America, NOT the countries they came from. Let shame be placed upon them as they continue with their so-called "honor-killings" and their suicidal murdering of Our American People. WAKE UP AMERICA, MONEY IS POWER, NO VALUE OF HUMAN LIFE IS DESTRUCTION.

Reply Friday, January 07, 2011 at 11:30 AM
www.google.com/accounts/o8/id?id=AltOawluZ9A7zcYLL79sY9jFOi77DKxlSlap588 said...

If you go to any CAIR web site, you will see a page encouraging Muslims to submit reports of discrimination or other issues. Thus, CAIR has established itself as a antagonist and encourages antagonism using our system to crush non-Muslims, non-Muslim systems, etc.. Judicial Jihad. When America has had enough of this, they will have only themselves to blame. I believe the time has come to use the same approach on them x 10.

Reply Friday, January 07, 2011 at 12:59 PM
Teacake said...

Can't tell if the error is with your paypal donate link or my computer. I keep getting this message - Sorry — your last action could not be completed

Reply Friday, January 07, 2011 at 04:18 PM
Nat's daughter said in reply to Teacake...

I too had a problem with the donation link. I sent my check in the mail. Shruggers, please support Pamela and her attorney.

Reply Saturday, January 08, 2011 at 09:39 AM
Rob Doob said...

Protection Orders date to Medieval times. That is an interesting tactic, viz politically motivated law suits. Findings that causes are "frivolous" or "vexatious" reflect content, and not deep motive. I hope this works.

"Discrimination" is founded on differential treatment of persons entitled to equal benefit of law. Muslims should be treated differently, given the prevalence of jihad-terror fatwahs, scribed by clerics (imams). Belief in islam is like carrying a disease.

I CERTIFY THAT A COPY OF THIS DOCUMENT WAS, ONE ONLY, (X)MAILED ( ) FAXED AND MAILED ( ) HAND DELIVERED TO THE PERSON(S) LISTED BELOW ON (DATE) Jan 10TH, 2011

**PLAINTIFF...CASE 2009 CA 007420 NC**
Pamela Geller
330 East 57th Street
Manhattan, New York City
New York 10022

I UNDERSTAND THAT I AM SWEARING OR AFFIRMING UNDER OATH TO THE TRUTFULNESS OF THE CLAIMS MADE IN THIS REPLY AND THAT THE PUNISHMENT FOR KNOWINGLY MAKING A FALSE STATEMENT INCLUDES FINES AND/OR IMPRISONMENT.

DATED Jan 10TH, 2011

William "Bill" Warner
2100 Constitution Blvd.
Sarasota Fl 34231
Phone (941) 926-1926

William "Bill" Warner

**STATE OF FLORIDA**
**COUNTY OF SARASOTA**
Sworn to or affirmed and signed before me on 1-10-11 by _____

NOTARY PUBLIC STATE OF FLORIDA

(Print, type or stamp commissioned name of notary)

____ Personally Known

__/__ Produced identification



JOSUE BAUTISTA
MY COMMISSION # DD 989472
EXPIRES: March 9, 2014